| | |
|---|---|
| 1   Eleanor A. DuBay, WSBA #45828 | Judge:      Alston |
|     TOMASI SALYER MARTIN | Chapter:     7 |
| 2   121 SW Morrison St, Suite 1850 | Location:     Telephonic |
|     Portland, OR 97204 | Hearing Date: September 3, 2020 |
| 3   Telephone: (503) 894-9900 | Hearing Time: 11:00 AM |
|     Email: edubay@tomasilegal.com | Response Date: August 27, 2020 |

4

    Attorneys for Defendant 21st Mortgage Corporation

5

6

7

8

9              IN THE UNITED STATES BANKRUPTCY COURT

10           FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 11   In re | Case No. 09-15167 |
| 12   Jack Carlton Cramer, Jr, | Adv. Proc. No. 20-01046-CMA |
| 13           Debtor, | DECLARATION OF WHIT REED IN SUPPORT OF DEFENDANT'S MOTION |
| 14 | TO DISMISS PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY |
| 15 | OF POST PETITION UNJUST ENRICHMENT CLAIM PURSUANT TO |
| 16 | FRCP 12(b) |
| 17   Jack Carlton Cramer, Jr, | |
| 18          Plaintiff, | |
| 19      v. | |
| 20   21st Mortgage Corporation, | |
| 21          Defendant. | |

22

23         I, Whit Reed, declare under penalty of perjury as follows:

24          1.      I am over the age of eighteen (18) and, except where specifically noted, I

25   have first hand knowledge of the facts stated herein. I am competent to testify to the matters

26   described herein and am authorized by 21st Mortgage Corporation, a Delaware corporation

Page 1 -   DECLARATION OF WHIT REED IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF POST PETITION UNJUST ENRICHMENT CLAIM PURSUANT TO FRCP 12(b)

21ST-F74\00525079.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Case 20-01047-CMA    Doc 9    Filed 08/05/20    Ent. 08/05/20 09:33:52    Pg. 1 of 26

1   doing business in the State of Washington ("21st" or "Defendant") to do so.

2          2.      I am employed by 21st as an Assistant Manager in its legal department. I

3   make this Declaration in support of the Defendant's Motion to Dismiss Plaintiff's Complaint to

4   Quiet Title and to Determine Extent and Validity of Existing Liens ("Motion") in the above

5   captioned matter.

6          3.      I am personally familiar with 21st's business records relating to the subject

7   of this Motion. I am a custodian of those business records which were created and maintained in

8   the regular and ordinary course of a regularly conducted business activity by a person charged

9   with a duty of creating and maintaining the business records.

10         4.      The exhibits attached hereto and incorporated herein by reference were

11  made at or near the date of the documents, or from information transmitted by a person with

12  knowledge thereof.  Said records are kept in the ordinary course of a regularly conducted

13  business activity and it is the regular practice of that business activity to make such a record.

14         5.      If called to be a witness to the facts set forth in this Declaration, I am able

15  to testify to the truth of the statements from my personal knowledge and as custodian of 21st's

16  business records related to the matters addressed in this Declaration. I am competent to testify to

17  the matters stated herein and authorized by 21st to do so.

18         6.      On or about December 22, 2000, Plaintiff, Jack Carlton Cramer, Jr.

19  ("Plaintiff" or "Cramer"), obtained a loan from Mortgage Market Inc. by executing and

20  delivering an Adjustable Rate Note for the original sum of $272,000 (the "Note"). A true and

21  correct copy of the Note is attached hereto and incorporated herein as Exhibit 1.

22         7.      In order to secure the prompt and punctual repayment of the Note, Cramer

23  granted a deed of trust ("Deed of Trust") encumbering real property located in King County[1] (the

24  "Property") in favor of Mortgage Market Inc., as beneficiary, which Deed of Trust was recorded

25  _____
    [1] The Property is located at 15605 63rd Ave NE, Kenmore, WA 98028 and is legally described as "Lot 1
26  in Block 3 of the Inglewoods No. 2, as per Plat recorded in Volume 54 of Plats, Pages 30 and 31, Records
    of King County Auditor." *See* Exhibit 2.

Page 2 -   DECLARATION OF WHIT REED IN SUPPORT OF DEFENDANT'S MOTION TO
           DISMISS PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY
           OF POST PETITION UNJUST ENRICHMENT CLAIM  PURSUANT TO FRCP
           12(b)
21ST-F74\00525079.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Case 20-01047-CMA    Doc 9    Filed 08/05/20    Ent. 08/05/20 09:33:52    Pg. 2 of 26

1   on December 28, 2000 as Recording No. 20001228001193, in King County, Washington. A true
2   and correct copy of the Deed of Trust is attached hereto and incorporated herein as Exhibit 2.
3   The Note and Deed of Trust are collectively referred to herein as the "Cramer Loan."

4           8.      Subsequent to the execution of the Note and Deed of Trust, the Cramer
5   Loan was transferred and assigned to Residential Funding Company, LLC ("RFC"). On May 14,
6   2012, RFC, and fifty other related companies, filed a petition in U.S. Bankruptcy Court for the
7   Southern District of New York. The Bankruptcy Court liquidated certain assets in this
8   proceeding, including the Cramer Loan, which was sold to Berkshire Hathaway, Inc.
9   ("Berkshire"). Thereafter, Berkshire deposited the Cramer Loan into the Knoxville 2012 Trust, a
10  Delaware statutory trust (the "Knoxville Trust"), and appointed Wilmington Savings Fund
11  Society, FSB, dba Christiana Trust, a division of Wilmington Savings Fund Society, FSB, as
12  Trustee ("Christiana"). Christiana then elected 21st as the Master Servicer and Custodian for the
13  Knoxville Trust, which included the Cramer Loan. To date, the Cramer Loan has remained in the
14  Knoxville Trust with 21st appointed as the Master Servicer and Custodian.

15          9.      The Note and Deed of Trust were subsequently assigned to 21st, which
16  Assignment of Deed of Trust was recorded in the King County Recorders Office under No.
17  20131011000414 on October 11, 2013. A true and correct copy of the Assignment of the Deed
18  of Trust is attached hereto and incorporated herein as Exhibit 3.

19          10.     On September 1, 2015, 21st initiated an equitable action against Plaintiff
20  in the Superior Court of King County for the common law claim of unjust enrichment and for
21  recovery of sums advanced by 21st for real property taxes and homeowners insurance premiums
22  on the Property.

23          11.     The King County Superior Court entered a Judgment for Money Owed
24  ("Judgment") on July 14, 2016 against Plaintiff and in favor of 21st for a principal amount of
25  $21,904.58, which was recorded in the King County Records Officer under No.
26  20160802000179 on August 2, 2016, as set forth in Proof of Claim No. 4 filed in this

Page 3 -   DECLARATION OF WHIT REED IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY
OF POST PETITION UNJUST ENRICHMENT CLAIM PURSUANT TO FRCP
12(b)

21ST-F74\00525079.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

1     proceeding.  A true and correct copy of the Judgment is attached hereto and incorporated herein

2     as Exhibit 4.  The Judgment against Plaintiff remains unsatisfied and the judgment lien remains

3     attached to the Property, separate and apart from the Deed of Trust.

4             I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE

5     BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE

6     FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

7             DATED: August 5, 2020.

8

9                        By:  /s/ Whit Reed

10                        Whit Reed
                           21st Mortgage Corporation

11                        Location: Knoxville, TN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 4 -   DECLARATION OF WHIT REED IN SUPPORT OF DEFENDANT'S MOTION TO
           DISMISS PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY
           OF POST PETITION UNJUST ENRICHMENT CLAIM  PURSUANT TO FRCP
           12(b)
21ST-F74\00525079.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**CERTIFICATE OF SERVICE**

2        I hereby certify that on August 5, 2020 I served a copy of the foregoing

3   **DECLARATION OF WHIT REED IN SUPPORT OF DEFENDANT'S MOTION TO**

4   **DISMISS PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF**

5   **POST PETITION UNJUST ENRICHMENT CLAIM  PURSUANT TO FRCP 12(b)** by

6   electronic means using ECF to the parties listed below:

7        Christina L Henry on behalf of Plaintiff Jack Carlton Cramer, Jr
        chenry@hdm-legal.com; HenryDeGraaffPS@jubileebk.net;
8        mainline@hdm-legal.com

9        Rory C Livesey on behalf of Interested Party Courtesy NEF
        rory@liveslaw.com, patti@liveslaw.com

10

11       DATED: August 5, 2020.

12                      TOMASI SALYER MARTIN

13

14

                      By:  /s/ Eleanor A. DuBay
15                        Eleanor A. DuBay, WSBA #45828
                        edubay@tomasilegal.com
16                        Phone: (503) 894-9900
17                        Attorneys for Defendant 21st Mortgage
                        Corporation

18

19

20

21

22

23

24

25

26

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Countrywide Home Loans

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
610  000053278  N  001  003

0053278

# ADJUSTABLE RATE NOTE

### (LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

**LOAN NO.** ▮

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| | | |
|---|---|---|
| DECEMBER 22, 2000 | LYNNWOOD, | WASHINGTON |
| | [City] | [State] |

15605 63RD AVENUE NORTHEAST
KENMORE, WA  98028
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **272,000.00** (this amount is called "principal''), plus interest, to the order of the Lender. The Lender is
**MORTGAGE MARKET, INC.,**
**AN OREGON CORPORATION**

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **11.500** %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the **1ST** of each month beginning on **FEBRUARY 1, 2001** .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **JANUARY 1, 2031** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
**P.O. BOX 54 - 2934, CHICAGO, IL  60654 - 0934**
or at a different place if required by the Note Holder.
**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ **2,693.59** . This amount may change.
**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**
The interest rate I will pay may change on **JANUARY 1, 2003** , and on that day every **6th** month thereafter. Each date on which my adjustable interest rate could change is called a "Change Date."
**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE  ADJUSTABLE RATE NOTE - LIBOR 6 MONTH INDEX  (AS PUBLISHED IN THE WALL STREET JOURNAL)
1N93520 (06/94)

Initials: _____

Exhibit 1
Page 1 of 5

Case 20-01047-CMA    Doc 9    Filed 08/05/20    Ent. 08/05/20 09:33:52    Pg. 6 of 26

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **SIX AND THREE TENTHS** percentage point(s) ( **6.300** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **14.500** % or less than **11.500** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage point(s) ( **1.000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **17.500** %, nor less than **11.500** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

Initials

Exhibit 1
Page 2 of 5

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____ (Seal)
JACK C. CRAMER, JR.    - Borrower

_____ (Seal)
   - Borrower

_____ (Seal)
   - Borrower

_____ (Seal)
   - Borrower

*[Sign Original Only]*

LOAN NUMBER: ▮▮▮▮▮

DO NOT SIGN THIS LOAN AGREEMENT BEFORE YOU READ IT. THIS LOAN AGREEMENT PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO REPAY THE LOAN PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THE LOAN AGREEMENT.

## ADJUSTABLE RATE MORTGAGE NOTE ADDENDUM
### BORROWERS RIGHT TO REPAY
### PREPAYMENT PENALTY RIDER

THIS LOAN IS AN ALTERNATIVE MORTGAGE TRANSACTION WITHIN THE MEANING OF THE ALTERNATIVE MORTGAGE TRANSACTIONS PARITY ACT OF 1982, 12 UNITED STATES CODE SECTION 3800 AND FOLLOWING, AS AMENDED, AND THE APPLICABLE FEDERAL REGULATIONS ADOPTED PURSUANT THERETO, AS AMENDED

This Adjustable Rate Mortgage Note Addendum is made on the **22ND** day of **DECEMBER, 2000**        , and is incorporated into and made a part and shall be deemed to amend and supplement the Adjustable Rate Note made by the undersigned borrower(s) in favor of **MORTGAGE MARKET, INC., AN OREGON CORPORATION** (the Lender) and dated as of even date herewith (the Note).

I, (the Borrower) understand the Lender may transfer the Note, Related Mortgage, Deed of Trust, Security Deed, Deed to Secure Debt or other security instrument (the Security Instrument) and this Addendum. The Lender or anyone who takes and holds the Note, Security Agreement and this Addendum by transfer and who is entitled to receive payments under the Note is called the Note Holder.

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements in the Note and in the Security Agreement, Borrower and Lender further covenant and agree as follows (despite anything stated to the contrary which is contained in the Note or Security Agreement).

**BORROWER'S RIGHT TO PREPAY:** I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a prepayment. When I make a prepayment, I will tell the Note Holder in writing that I am dosing so, I may make a full prepayment or partial prepayments. However, if the aggregate amount of the prepayments made during any twelve (12) month period within **2**      years of the date of execution of the Note exceeds twenty percent (20%) of the original principal amount of the Note, then as consideration for the acceptance of such payment(s), and unless otherwise prohibited by state law, I agree to pay the Note Handler a sum equal to six (6) month interest on the amount by which such prepayment(s) exceed twenty percent (20%) of the original principal amount of this Note. Any prepayments made after said initial **2**     year period shall not be subject to any prepayment charges. The Note Holder will use all of my prepayments to reduce the amount of the principle that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates or in the amount of my monthly payments unless the Note Holder agrees in writing to those changes. **THIS PARAGRAPH REPLACES AND IS IN SUBSTITUTION FOR THE BORROWERS RIGHT TO PREPAY PARAGRAPH IN THE NOTE SUPPLEMENTED HEREBY.**

**PURCHASE MONEY STATEMENT:** Borrower(s) agree that at least some portion of the debt being financed or refinanced by and evidenced by the above referred to Adjustable Rate Note is or was purchase money debt of the borrowers.

BY SIGNING BELOW, Borrower(s) accepts and agrees to the terms and covenants contained in this Note Addendum.

_Jack C. Cramer, Jr._ (Seal)        _____ (Seal)
JACK C. CRAMER, JR.        - Borrower                              - Borrower

_____ (Seal)        _____ (Seal)
                              - Borrower                              - Borrower

Prepayment Note Addendum (5/99)
PREPAY2

Exhibit 1
Page 4 of 5

Case 20-01047-CMA    Doc 9    Filed 08/05/20    Ent. 08/05/20 09:33:52    Pg. 9 of 26

PAY TO THE ORDER OF
21st Mortgage Corporation
WITHOUT RECOURSE
Residential Funding Company, LLC

By _____
Judy Faber Vice President

PAY TO THE ORDER OF                RESIDENTIAL FUNDING COMPANY, LLC
WITHOUT RECOURSE.

BY _____
JEN MURK
PRODUCTION MANAGER
MORTGAGE MARKET, INC.

Exhibit 1
Page 5 of 5

**Return Address:**

Mortgage Market
440 N Orleans
Chicago, IL 60610
ATTN Final Docs



**20001228001193**
FIDELITY NATIO DT                1B 00
PAGE 001 OF 011
12/28/2000 13:58
KING COUNTY, WA

Please print or type information **WASHINGTON STATE RECORDER'S Cover Sheet** (RCW 65.04)

**Document Title(s)** (or transactions contained therein): (all areas applicable to your document must be filled in)

1. Deed of Trust
2.
3.
4.

**Reference Number(s) of Documents assigned or released:**

Additional reference #'s on page _____ of document.

**Grantor(s)** (Last name first, then first name and initials)

1. Jack C Cramer Jr
2.
3.
4.

☐ Additional names on page _____ of document.

**Grantee(s)** (Last name first, then first name and initials)

1. Mortgage Market Inc
2.
3.
4.

☐ Additional names on page _____ of document.

**Legal description** (abbreviated: i.e. lot, block, plat or section, township, range)

Lot 1, Block 3, Inglewoods No 2, Vol 54/30-31

☐ Additional legal is on page _____ of document.

**Assessor's Property Tax Parcel/Account Number**

☐ Assessor Tax # not yet assigned    358330-0105-07

The Auditor/Recorder will rely on the information provided on the form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.

WHEN RECORDED RETURN TO:
MORTGAGE MARKET, ATTN: FINAL DOCS
440 NORTH ORLEANS
CHICAGO, IL 60610

[Space Above This Line For Recording Data]

LOAN NO. ▉▉▉▉▉▉

# DEED OF TRUST

MIN

THIS DEED OF TRUST ("Security Instrument") is made on **DECEMBER 22, 2000**
The grantor is **JACK C. CRAMER, JR., AS HIS SEPARATE ESTATE,**

FIDELITY NATIONAL TITLE

("Borrower")  The trustee is
**PACIFIC NORTHWEST TITLE OF OREGON, INC.,**   286513·1        17
**AN OREGON CORPORATION**
("Trustee")  The beneficiary is Mortgage Electronic Registration Systems, INC. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns)  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS
**MORTGAGE MARKET, INC , AN OREGON CORPORATION**
("Lender") is organized and existing under the laws of   **OREGON**                                  , and has an address of   **9020 SW WASHINGTON SQUARE DR. #550,**
            **TIGARD, OR   97223**
Borrower owes Lender the principal sum of   **TWO HUNDRED SEVENTY-TWO THOUSAND AND 00/100**

Dollars (U S $        **272,000.00**        )  This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments,  with the full debt, if not paid earlier, due and payable on
**JANUARY 1, 2031.**                       This Security Instrument secures to Lender  (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note, (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in
**KING**                                                                          County, Oregon
**LOT 1, BLOCK 3, THE INGELWOODS NO. 2, ACCORDING TO THE PLAT
THEREOF RECORDED IN VOLUME 54 OF PLATS, PAGES 30 AND 31,
RECORDS OF KING COUNTY, WASHINGTON.
SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.**
TAx parcel no. 358330 0105-07

which has the address of   **15605 63RD AVENUE NORTHEAST,  KENMORE**
                                                          [Street]                                            [City]
Oregon           **98028**                    ("Property Address"),
                   [Zip Code]

Initials ▉▉▉

Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
MERS3038 (03/00)
                                        Page 1 of 7

Exhibit 2
Page 2 of 11
Case 20-01047-CMA    Doc 9    Filed 08/05/20   Ent. 08/05/20 09:33:52   Pg. 12 of 26

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property" Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS Borrower and Lender covenant and agree as follows

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard or property insurance premiums, (d) yearly flood insurance premiums, if any, (e) yearly mortgage insurance premiums, if any, and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums These items are called "Escrow Items " Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq ("RESPA"), unless another law that applies to the Funds sets a lesser amount If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank Lender shall apply the Funds to pay the Escrow Items Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made The Funds are pledged as additional security for all sums secured by this Security Instrument

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied first, to any prepayment charges due under the Note, second, to amounts payable under paragraph 2, third, to interest due, fourth, to principal due, and last, to any late charges due under the Note

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, (b) contests in good faith the lien

Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
MERS3038 (03/00)

Initials (

by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the

Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
MERS3038 (03/00)

Initials

Page 3 of 7

mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security

Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
MERS3038 (03/00)

Initials _____

Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument, or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate**

after acceleration and the right bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by applicable law to Borrower and to other persons prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**23. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**24. Attorneys' Fees.** As used in this Security Instrument and in the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument    [Check applicable box(es)]

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Planned Unit Development Rider |
|---|---|---|
| [ ] 1-4 Family Rider | [ ] Graduated Payment Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
MERS3038 (03/00)

Page 6 of 7

Initials

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it

Witnesses

_____          *Jack Cramer Jr*          (Seal)
                                                          JACK C. CRAMER, JR.         Borrower

_____          _____  (Seal)
                                                                                      - Borrower

                                                          _____  (Seal)
                                                                                      - Borrower

                                                          _____  (Seal)
                                                                                      Borrower

[Space Below This Line For Acknowledgement]

STATE OF Washington )
                    ) ss:
COUNTY OF King      )

The foregoing instrument was acknowledged before me, a Notary Public, on _____12-22-00_____
                                                                                Date

by

Person(s) Acknowledging    Jack C Cramer, JR

In WITNESS WHEREOF, I have hereunto set my hand and official seal

My Commission expires    5-19-03

                                          *Mark Knodel*
                                          Notary Public

*[Notary seal: MARK KNODEL, COMMISSION EXPIRES, NOTARY PUBLIC, 5-19-03, STATE OF WASHINGTON]*

Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
MERS3038 (03/00)

                              Page 7 of 7                          Initials _____

# ADJUSTABLE RATE RIDER
### (LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

LOAN NO. ▉▉▉▉▉▉

THIS ADJUSTABLE RATE RIDER is made this **22ND** day of **DECEMBER, 2000** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

**MORTGAGE MARKET, INC ,**
**AN OREGON CORPORATION**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at

**15605 63RD AVENUE NORTHEAST**
**KENMORE, WA 98028**
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of **11.500** % The Note provides for changes in the interest rate and the monthly payments, as follows

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The interest rate I will pay may change on **JANUARY 1, 2003** , and on that day every **6th** month thereafter Each date on which my interest rate could change is called a "Change Date "

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U S dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index "

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information The Note Holder will give me notice of this choice

Multistate Adjustable Rate Rider - LIBOR 6 Mo Index (As Published in the Wall Street Journal) - Single Family - FNMA Uniform Instrument
FNMA3138

Initials

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
**SIX AND THREE TENTHS** percentage point(s) ( **6.300** %)
to the Current Index The Note Holder will then round the result of this addition to the nearest one-eighth of
one percentage point (0 125%) Subject to the limits stated in Section 4(D) below, this rounded amount will
be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay
the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new
interest rate in substantially equal payments The result of this calculation will be the new amount of my
monthly payment

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **14.500** % or
less than **11.500** % Thereafter, my interest rate will never be increased or decreased on any
single Change Date by more than **ONE**
percentage point(s) ( **1.000** %) from the rate of interest I have been paying for the preceding
**6** months My interest rate will never be greater than **17.500** %, nor
less than **11.500** %

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date I will pay the amount of my new
monthly payment beginning on the first monthly payment date after the Change Date until the amount of my
monthly payment changes again

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of
my monthly payment before the effective date of any change The notice will include information required by
law to be given me and also the telephone number of a person who will answer any question I may have
regarding the notice


**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any
interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is
not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate
payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by
Lender if exercise is prohibited by federal law as of the date of this Security Instrument Lender also shall not
exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to
evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably
determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of
any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's
consent to the loan assumption Lender also may require the transferee to sign an assumption agreement that is
acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note
and in this Security Instrument Borrower will continue to be obligated under the Note and this Security
Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of
acceleration The notice shall provide a period of not less than 30 days from the date the notice is delivered or
mailed within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay
these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security
Instrument without further notice or demand on Borrower

Multistate Adjustable Rate Rider - LIBOR 6 Mo Index (As Published in the Wall Street Journal) - Single Family - FNMA Uniform Instrument        Initials
FNMA3138

Page 2 of 3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider

_____ (Seal)
JACK C. CRAMER, JR.                         - Borrower

_____ (Seal)
                                            - Borrower

_____ (Seal)
                                            - Borrower

_____ (Seal)
                                            - Borrower

Multistate Adjustable Rate Rider - LIBOR 6 Mo Index (As Published in the Wall Street Journal) - Single Family - FNMA Uniform Instrument
FNMA3138
Page 3 of 3

21st Mortgage Corporation
620 Market Street
Knoxville TN 37902
Loan # 405786
Prepared by:
Jennifer Puleo_____

0810038240

2013101100 0414
OCWEN        ADT        14.00
PAGE-001 OF 001
10/11/2013 09:48
KING COUNTY, WA

### ASSIGNMENT OF DEED OF TRUST

**Christiana Trust, a division of Wilmington Savings Fund Society FSB as a Trustee for Knoxville 2012 Trust**, a Delaware Corporation, ("Assignor"), with an address of 500 Delaware Avenue 11th FLR, Wilmington, DE 19801, in consideration of one dollar ($1.00) and other good and valuable consideration paid by **21ST MORTGAGE CORPORATION**, a Delaware Corporation ("Assignee"), with an address of 620 Market Street, Suite 100, Knoxville, TN 37902, hereby assigns, transfers and conveys unto Assignee the following mortgage or deed of trust (the "**Mortgage**"):

Borrower(s)/Grantor(s): Jack C Cramer Jr
Mortgage Date: <u>12/22/00</u>      Mortgage Recording Date: <u>12/28/00</u>
Recording Office: <u>King   WA</u>
Recording Information: <u>Book/Reel/Liber: N/A</u>   <u>Page/Folio: N/A</u>
as Instrument No: <u>20001228001193</u>          Mortgage Amount: <u>$272,000.00</u>

Property Address:<u>15605 63rd Ave NE Kenmore WA 98028</u>

together with the bond or obligation described in the Mortgage and the moneys due and to grow thereon with the interest. Assignor declares that it is the beneficiary of the Mortgage and the holder of the obligations secured thereby and that the Mortgage has not been previously assigned by Assignor. To have and to hold the same unto Assignee and its successors, legal representatives and assigns forever.

In Witness Whereof, Assignor has executed this instrument this 9/24/13.

CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS
FUND SOCIETY FSB AS TRUSTEE FOR KNOXVILLE 2012 TRUST,

By: 21st Mortgage Corporation,
its attorney-in-fact

WITNESS  Sheila Allen

WITNESS  Kristy Aiello

By:_____
Troy Fussell

Title:  Vice President
        Authorized Signatory

STATE OF Tennessee

COUNTY OF Knox

Before me, the undersigned Notary Public of the said said county aforesaid, personally appeared Troy Fussell, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself to be the Vice President (or other officer authorized to execute the instrument) of 21st Mortgage Corporation, as attorney-in-fact for Christiana Trust, a division of Wilmington Savings Fund Society FSB as Trustee for Knoxville 2012 Trust, and that he as such Vice President, executed the foregoing instrument for the purpose therein contained, by signing the name of the corporation by himself.

Witness my hand and seal, this 9/24/13.

_____          _____
Notary Public                              My commission expires

Return Address:
**Tomasi Salyer Baroway**
**Chelsea S. Lewandowski**
**121 SW Morrison St., Suite 1850**
**Portland, OR 97204**



**20160802000179**
TOMASI SALYER J       76.00
PAGE-001 OF 004
08/02/2016 09:05
KING COUNTY, WA

Please print or type information **WASHINGTON STATE RECORDER'S Cover Sheet** (RCW 65.04)

---

**Document Title(s)** (or transactions contained therein): (all areas applicable to your document **must** be filled in)

1. Judgment for Money Owed _____ 2. _____
3. _____ 4. _____

---

**Reference Number(s) of Documents assigned or released:**

Additional reference #'s on page _____ of document

---

**Grantor(s)** (Last name, first name, initials)
1. Jack C. Cramer, Jr. _____, Judgment Debtor _____
2. _____, _____

Additional names on page _____ of document.

---

**Grantee(s)** (Last name first, then first name and initials)
1. 21st Mortgage Corporation _____, Judgment Creditor _____
2. _____, _____

Additional names on page _____ of document.

---

**Legal description** (abbreviated: i.e. lot, block, plat or section, township, range)

  Any and all real property Jack C. Cramer, Jr. currently owns or subsequently acquires in King County, _____

  Washington. _____

  _____ _____

Additional legal is on page _____ of document.

---

**Assessor's Property Tax Parcel/Account Number**         ☐ Assessor Tax # not yet assigned

_____

---

The Auditor/Recorder will rely on the information provided on the form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.

I am requesting an emergency nonstandard recording for an additional fee as provided in RCW 36.18.010. I understand that the recording processing requirements may cover up or otherwise obscure some part of the text of the original document.

_____ _____Signature of Requesting Party

CERTIFIED

COPY

HONORABLE TIMOTHY A. BRADSHAW

FILED
KING COUNTY, WASHINGTON

JUL 14 2016

SUPERIOR COURT CLERK
BY Victor Bigomla
DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

FOR THE COUNTY OF KING

21ST MORTGAGE CORPORATION, a
Delaware corporation,

    Plaintiff,

        v.

JACK C. CRAMER, JR.; and JANE DOE
CRAMER, and the marital community thereof,

    Defendants.

Case No. 15-2-21512-4 SEA

JUDGMENT FOR MONEY OWED

### JUDGMENT SUMMARY

| | | | |
|---|---|---|---|
| 1. | Judgment Creditor | : | 21st Mortgage Corporation |
| 2. | Attorney for Judgment Creditor | : | Chelsea S. Lewandowski<br>Tomasi Salyer Baroway<br>121 SW Morrison St., Suite 1850<br>Portland, OR 97204 |
| 3. | Judgment Debtor | : | Jack C. Cramer, Jr. |
| 4. | Attorney for Judgment Debtor | : | Helmut Kah |
| 5. | Principal Amount of Judgment | : | $21,904.58 |
| 6. | Interest to Date of Judgment<br>   Accrued through 6/28/16<br>   Thereafter until Judgment is entered | :<br>: | <br>$6,595.09<br>$7.20 per day |
| 7. | Costs | : | $1,536.53 |
| 8. | Total Judgment Balance [items 5-7] shall bear post judgment interest at 12% per annum. | | |

Page 1 -  JUDGMENT FOR MONEY OWED
21ST-F7400244285.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

1       This matter came before the Court on Plaintiff's Motion for Summary Judgment Against

2    Defendant Jack C. Cramer, Jr. affirmative defenses as against Plaintiff. It appearing from the

3    record herein that an Order Granting Plaintiff 21st Mortgage Corporation's Motion for Summary

4    Judgment Against Defendant Jack C. Cramer, Jr. was entered on June 21, 2016 granting

5    Plaintiff's unjust enrichment claim in full and dismissing with prejudice as against Plaintiff each

6    and every affirmative defense of Defendant Jack C. Cramer, Jr., and the Court being fully

7    advised that,

8       NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED as follows:

9        1.    That a judgment for money owed be entered in favor of plaintiff and

10   against defendant Jack C. Cramer, Jr. thereof in the amounts of (a) $2,365.14 with interest

11   accruing thereon at the rate of 12% per annum from September 27, 2012 until judgment is

12   entered; (b) $1,195.00 with interest accruing thereon at the rate of 12% per annum from October

13   18, 2012 until judgment is entered; (c) $2,426.46 with interest accruing thereon at the rate of

14   12% per annum from March 26, 2013 until judgment is entered; (d) $2,426.46 with interest

15   accruing thereon at the rate of 12% per annum from September 26, 2013 until judgment is entered;

16   (e) $2,951.03 with interest accruing thereon at the rate of 12% per annum from October 13, 2013

17   until judgment is entered; (f) $5,342.79 with interest accruing thereon at the rate of 12% per

18   annum from March 14, 2014 until judgment is entered; and (g) $5,427.70 with interest accruing

19   thereon at the rate of 12% per annum from February 20, 2015 until judgment is entered; for

20   $1,536.53 in Plaintiff's costs and disbursements; and for interest on the total judgment at the rate

21   of 12% per annum from the date judgment is entered until paid in full.

22       DATED this _____ day of July, 2016.

23

24

25                        Honorable Timothy A. Bradshaw

26                        Superior Court Judge

Page 2 -   JUDGMENT FOR MONEY OWED
21ST-F74\00244285.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

I BARBARA MINER Clerk of the Superior Court of the State of Washington for King County do hereby certify that this copy is a true and perfect transcript of said original as it appears on file and of record in my office and of the whole thereof IN TESTIMONY WHEREOF I have affixed this seal of said Superior Court at my office at Seattle on this date_____ JUL 1 8 2016



BARBARA MINER, Superior Court Clerk

By_____
Deputy Clerk